Lionel WALTERS, Plaintiff,

v.

SHARI MUSIC PUBLISHING CORPO-
RATION et al., Defendants.

United States District Court
S. D. New York.

April 22, 1960.

Theodore R. Kupferman, New York
City, for plaintiff.

Rosston, Hort & Brussel, New York
City, for defendants.

DIMOCK, District Judge.

These are cross-motions for summary judgment. The action seeks an injunction against publication of copies of a musical composition entitled "Jamaica Farewell". The complaint was framed as one for copyright infringement and stated no facts warranting relief on any other theory. The notice of readiness filed by plaintiff, however, characterized the action as for "infringement of copyright, unfair competition, unfair trade practices, and abuse of confidential relationship". Applying by analogy the rule that a complaint will not be dismissed unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim, Spohn v. United States, D.C.S.D.N.Y., 16 F.R.D. 240, plaintiff would be permitted to attempt to support his claim for an injunction by proof of abuse of a confidential relationship.

Plaintiff obtained copyright registration of the words and music of a song entitled "Iron Bar" on February 9, 1954. Thereafter he employed defendant Burgess, hereinafter called by his actual name, Burgie, to sing the song with an orchestra so as to make a phonographic record. There is no evidence that plaintiff ever succeeded in finding a publisher for the song or a producer for the record. On September 15, 1955, defendant Burgie obtained copyright registration of the "words, music, arrangement" of a song entitled "Jamaica Farewell". Plaintiff charges that the music for this song was stolen from his "Iron Bar" by defendant Burgie. "Jamaica Farewell" has been sung with considerable success by defendant Belafonte and records have been sold by defendant Radio Corporation of America. The publication rights have been assigned to defendant Shari Music Publishing Corporation.

A song entitled "Iron Bar" has been part of the folk music of Jamaica, B.W.I., for many years. Its words and music were published in a collection of Jamaican folk songs as early as 1944 and a phonograph recording of it was marketed in London as Melodisc 1182 as early as 1951. The air of the folk song is, to the casual ear, melodious and, unless played in immediate juxtaposition, indistinguishable from the airs of plaintiff's copyrighted "Iron Bar" and defendants' "Jamaica Farewell". So far as similarity is concerned, if any one of the three melodies was validly copyrighted the other two would be palpable infringements. This has been exhaustively demonstrated before me from a technical musical standpoint but the impression of substantial identity made upon the untrained ear is even more convincing. As Circuit Judge Learned Hand said of dramatic compositions in Nichols v. Universal Pictures Corporation, 2 Cir., 45 F.2d 119, 123, certiorari denied 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795, "the more the court is led into the intri-

cacies of dramatic craftsmanship, the less likely it is to stand upon the firmer, if more naive, ground of its considered impressions upon its own perusal".

Plaintiff's and defendant Burgie's melodies are both copies, either direct or indirect, of the Jamaica folk melody. Plaintiff was brought up in Jamaica. In spite of the facts that he called his song by the name of the folk song, "Iron Bar", and that the words of his first stanza were substantially the same as the words of the second stanza of the folk song, plaintiff claims absolute originality for name, words and music. I find, however, that either consciously or subconsciously he copied all three.

Defendant Burgie not only admits but claims that he copied the melody of the folk song. Though brought up in the United States, he is of West Indian extraction and spent his childhood in a West Indian community in Brooklyn. He swears that he became familiar with the folk song "Iron Bar" in those days and that he so informed plaintiff when plaintiff hired him to sing the same melody. This occurrence plaintiff categorically denies.

While there can be no issue of fact as to the identity of the melodies of the three songs, there is a sharply contested issue as to which "Iron Bar" it was that Burgie directly copied; the folk "Iron Bar" or plaintiff's "Iron Bar". The result of the case against defendant Burgie may well hang upon the answer to that question.

Restatement, Agency II, section 396 states:

> "Unless otherwise agreed, after the termination of the agency, the agent * * * (b) has a duty to the principal not to use or to disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty."

It seems to me that the melody of "Iron Bar" as disclosed by plaintiff to defendant Burgie was one of the "confidential matters" referred to in the Restatement. Plaintiff was obviously attempting to exploit it. He had obtained copyright registration and was having a recording made. If defendant Burgie had got his first acquaintance with the tune when hired to sing Burgie's copy, his subsequent use of the tune was a violation of his confidential relationship with plaintiff. His exploitation of the melody was in direct competition with his former employer from whom, by hypothesis, he had obtained it.

The doctrine has its origin as an analogy to the law of trade secrets and in both branches of the law the question arises as to how secret the "trade secret" must be to be entitled to protection. The fact that it is not patentable or copyrightable does not disqualify it. Restatement, Torts, Vol. IV, pp. 6–7. Here the melody was an obscure one so far as this country was concerned. I find that it was secret enough so that, if it was first brought to defendant Burgie's attention when he was hired to sing it by one who claimed ownership, its exploitation by Burgie was an actionable wrong. Though anyone else who learned of plaintiff's plans to exploit the tune would have been free to go into competition with him, defendant Burgie's acceptance of the benefit of employment by plaintiff carried with it the burden of disqualification to use in such competition information so acquired. As was said by Mr. Justice Holmes in DuPont De Nemours Powder Co. v. Masland, 244 U.S. 100, 102, 37 S.Ct. 575, 576, 61 L.Ed. 1016, "If there is any disadvantage in the fact that he knew the plaintiffs' secrets he must take the burden with the good". If, however, he had known the melody before and plaintiff's project merely gave Burgie the idea of exploiting the tune in competition with him, Burgie was within his rights in doing so.

While defendant Burgie's liability thus hangs on an unresolved issue, plaintiff has not attempted to show that,

prior to institution of this suit, defendants Shari Music Publishing Corporation, Radio Corporation of America and Harry Belafonte had knowledge of any breach of confidential relationship. This does not, however mean that they are entitled to a dismissal. The disclosure in this suit of the claim of such a breach by Burgie might cast upon the other defendants liability for subsequent use of the song unless they could establish the defense that their rights had been obtained for value or that they had so changed their positions that to subject them to liability would be inequitable. Restatement, Torts, § 758, Vol. IV, p. 18. They must be given an opportunity to establish such a defense in the event that plaintiff is able to establish such a breach.

Motion for summary judgment dismissing the complaint denied.

Motion for summary judgment for plaintiff denied.